**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jack L. LEWIS and Edward E. Lane,**
**Defendants-Appellants.**

**No. 71-1422.**

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1972.

Rehearing and Rehearing En Banc
Denied Feb. 27, 1973.

Virgil M. Wheeler, Jr., Albert B. Koorie, New Orleans, La., for defendants-appellants.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Jack L. Lewis and Edward E. Lane were engaged in the business of accepting wagers. They were each convicted on two counts of criminal violations which resulted from their filing tax returns pursuant to the Federal wagering excise tax laws. Under *Marchetti* [1] and *Grosso* [2] they could not now be punished if they had not filed the returns at all, but having filed the returns they were indicted (1) in separate counts for willfully and knowingly making and subscribing false returns in that they did not correctly show their business addresses, and (2) in a single count against both for attempting to evade the excise tax by filing returns understating their gross wagers. As to the first, we find that our decision in Kolaski v. United States, 362 F.2d 847 (5th Cir. 1966), requires reversal, and as to the second, *Marchetti* and *Grosso* effectively bar prosecution. We there-

---

1. Those who properly assert the constitutional privilege against self-incrimination may not be criminally prosecuted for failure to comply with the Federal wagering occupational tax statutes, either as to registration, or payment. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

2. A person cannot be convicted for willful failure to pay the Federal excise tax on wagering because the payment would provide incriminating information in violation of his Fifth Amendment privilege against self-incrimination. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

fore reverse the convictions of both defendants.

## I.

In separate counts it was charged that each defendant did willfully and knowingly make and subscribe a Special Tax Return and Application for Registry-Wagering, Form 11–C, for the fiscal period ending June 30, 1967, which he did not believe to be true and correct in that the return incorrectly showed his business address to be the same as his residence address. It was proved that both were engaged in wagering at a different address, which the government charged should have been listed as their business address. The Internal Revenue Code, 26 U.S.C. § 7206(1) makes it a felony for any person to willfully make and subscribe any return under penalties of perjury which he does not believe to be true and correct as to every material matter. Form 11–C is the return required to be filed by one who is subject to the annual occupational tax of $50 imposed by 26 U.S.C. § 4411[3] on any person who is engaged in receiving wagers, or who is liable for the 10% excise tax imposed on wagers under 26 U.S.C. § 4401.[4]

Lewis filed his return on June 28, 1966, for the period commencing July 1, 1966. Lane filed his return on June 29 for the same period. This was consistent with the registration sections of the wagering tax statutes and the regulations, which are prospective in nature and apply before any wagering has taken place. 26 C.F.R. § 44:6071–1(b).

This case falls squarely within the perimeters of the decision of this Circuit in Kolaski v. United States, *supra*, which involved this same occupational tax registration form. Kolaski was charged with filing a Form 11–C in which he stated that between the dates of October 26, 1964 and June 30, 1965, he had no agents or employees engaged in taking wagers, when in fact he had such employees. The Form 11–C itself was filed on October 26, 1964. He pled guilty to an indictment charging that he willfully and knowingly made the return which he did not believe was true and correct in this regard. He thereafter sought relief under § 2255. We set aside his judgment of conviction and sentence on the ground that the false statement, being prospective, was nothing more than a statement of intent. He was not charged with a false statement of intent.

We said:

"The statute here involved is a perjury statute. As in the general statute on perjury, 18 U.S.C.A. § 1621, the gist of the offense is a false statement, willfully made, of a material matter. The statement must be with

---

3. 26 U.S.C. § 4411. *Imposition of Tax.* "There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable."

4. 26 U.S.C. § 4401.
   § 4401. *Imposition of tax*
   (a) *Wagers.*—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.
   (b) *Amount of wager.*—In determining the amount of any wager for the purposes of this subchapter, all charges incident to the placing of such wager shall be included; except that if the taxpayer establishes, in accordance with regulations prescribed by the Secretary or his delegate, that an amount equal to the tax imposed by this subchapter has been collected as a separate charge from the person placing such wager, the amount so collected shall be excluded.
   (c) *Persons liable for tax.*—Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery. Any person required to register under section 4412 who receives wagers for or on behalf of another person without having registered under section 4412 the name and place of residence of such other person shall be liable for and shall pay the tax under this subchapter on all such wagers received by him.

respect to a fact or facts. United States v. Debrow, 346 U.S. 374, 74 S. Ct. 113, 98 L.Ed. 92. See Williams v. United States, 5th Cir. 1957, 239 F.2d 748. The statement must be such that the truth or falsity of it is susceptible of proof. United States v. Slutzky, 3rd Cir. 1935, 79 F.2d 504. The truth or falsity of the statement is to be related to the time the statement is made. Smith v. United States, 6th Cir. 1948, 169 F.2d 118.

It may be noted that the information does not charge a false statement of an intent to have employees in the future engaged in gambling. It charges that, on October 26, 1964, he stated that he had no employees engaged in gambling for the period October 26, 1964, to June 30, 1965, and that he then and there well knew that he did in fact have employees engaged in gambling for the period of October 26, 1964, to June 30, 1965. Since it would have been impossible for the appellant, on October 26, 1964, to have then and there, in fact, had employees for a more than eight months period then beginning, the statement made in the information could not be true and the truth of such statement was not susceptible of proof. The information does not state an offense." (362 F.2d at p. 848)

■ After *Marchetti* and *Grosso* the defendants could not be charged with failing to file a complete return. Assuming that wagering at different addresses would constitute separate offenses under state law, see LSA–R.S. 14:90, the rationale of *Marchetti* and *Grosso* would prevent criminal proceedings against defendants for failure to register any address where they were conducting wagering operations, even though they may have waived their right against self-incrimination as to other addresses by registration.

Prior to *Marchetti* and *Grosso*, the government would normally have proceeded against persons in defendants' position by prosecution for failure to file a return or an amended return showing the address where wagering was known to have been conducted. However, *Marchetti* and *Grosso* now foreclose such a course of action.

■ The government would have us follow the holding of the Sixth Circuit in United States v. Carabbia, 381 F.2d 133 (6th Cir. 1967) and the reasoning of the dissenting opinion in *Kolaski*. However, a panel of this Court cannot overrule a prior decision of the Circuit, en banc consideration being required. See F.R. A.P. Rule 35. In any event, *Carabbia*, like *Kolaski*, involved a listing of employees and would not dictate the same result in a case involving addresses of places of business subsequent to *Marchetti* and *Grosso*.

## II.

The second charge upon which Lewis and Lane were convicted alleged that they jointly attempted to evade the 10% excise tax imposed against the gross amount of wagers. The exact charge is important to their argument that it failed to allege facts constituting an offense under 26 U.S.C. § 7201 which provides:

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall . . . be guilty of a felony . . . ."

The indictment charged that Lewis and Lane were jointly engaged in the wagering business and that they attempted to evade the wagering excise tax by filing separate returns, Form 730, which, when combined, understated their gross partnership wagers.[5]

5. "Count VIII of the Indictment.
Count VIII.
That on or about April 3, 1967, and May 5, 1967, at New Orleans, Louisiana, in the Eastern District of Louisiana, EDWARD E. LANE, a resident of the City of Metairie, State of Louisiana, and JACK L. LEWIS, a resident of the City

When no wagering excise tax return has been filed, an individual cannot be criminally prosecuted under 26 U.S.C. § 7201 for willfully attempting to evade or defeat the tax imposed by the provisions of 26 U.S.C. § 4401 notwithstanding the fact that wagering excise taxes may be due and owing. Marchetti v. United States, *supra,* and Grosso v. United States, *supra.*

The government contended that during the month of February, 1967, the partnership had accepted wagers of $41,329.00. No partnership return was filed. The two partners filed individual returns which reported wagers totaling $33,447.00. They did this, the government charged, as an attempt to evade a portion of the partnership tax. This count did not charge the defendants with failure to file a partnership return, nor did it accuse them of filing false individual returns. It charged evasion of the partnership tax.

Lewis and Lane argue that this charge does nothing more than indirectly attempt to punish them for failure to file a partnership return, when *Marchetti* and *Grosso* forbid direct punishment for such failure. We agree.

Implicit in this charge is the assumption that defendants can operate a partnership and the government will approve a discharge of their partnership tax liability if they file and pay on individual returns reporting the partnership wagers. If this were not so then understatement of one's personal return could not constitute an attempt to evade partnership taxes. Yet nothing in the statute or regulations indicates that an individual must report partnership wagers on his personal return, or that he can fulfill the partnership's duty to report wagers by filing as an individual. The wagering tax laws recognize a partnership as a distinct entity. It is issued but one tax stamp regardless of the number of partners it has. See 26 C.F.R. § 44:4902, Liability of Partners. ("Any number of persons doing business in co-partnership at any one place shall be required to pay but one special tax.").

Prior to *Marchetti* and *Grosso* it would be possible, in a case such as this one, to consider that the filing of an individual return was merely an attempt to mask, or cover up, the taxpayer's true partnership liability which would have been disclosed on a proper partnership return. In United States v. Shaffer, 291 F.2d 689 (7th Cir. 1961), six persons were indicted for conspiracy to evade wagering taxes. The six operated a gambling business as partners, but filed no partnership return. Only one defendant, named Wyatt, filed an individual return, and this return substantially understated the amount of tax due from the partnership. The court held that the jury could properly conclude that the six defendants conspired to use Wyatt's return to mask the magnitude of the gambling enterprise, and thus evade taxes. While the rationale of the *Shaffer* decision is undeniably applicable to the set of facts before us, we think that the result cannot stand in the light of the Supreme Court's decision in Grosso v. United States, *supra.*

The defendant in *Grosso* was convicted of failure to pay the wagering excise

---

of Metairie, State of Louisiana, who jointly engaged in the business of accepting wagers on sporting events during the month of February 1967, did knowingly and wilfully attempt to evade and defeat a substantial amount of the wagering excise tax due and owing by them to the United States of America for the month of February 1967, by filing and causing to be filed with the District Director of Internal Revenue for the Internal Revenue District of New Orleans, at New Orleans, Louisiana, separate false and fraudulent wagering excise tax returns, Forms 730, wherein they showed that their gross wagers when combined for said month were the sum of $33,447.00 and that the amount of wagering tax due thereon was the sum of $3,344.70, whereas, as they then and there well knew, their gross wagers including lay-off wagers accepted were the sum of $41,329.00, upon which said gross wagers they owed to the United States of America a wagering excise tax of $4,132.90.

In violation of Section 7201, Internal Revenue Code 26 U.S.C., § 7201."

and occupational taxes, and of conspiracy to evade payment of these taxes. After holding that payment of the wagering excise tax would have compelled Grosso to incriminate himself, the Court reversed the conviction for conspiracy to evade the excise tax, stating, "a taxpayer may not be convicted of conspiracy to evade payment of the tax, if the constitutional privilege would properly prevent his conviction for willful failure to pay it." 390 U.S. at p. 70, 88 S.Ct. at p. 715. In the case of Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), Mr. Justice White commented on the *Marchetti* and *Grosso* decisions as follows: "The gambling registration and tax requirements were held [in those cases] to present substantial risks of self-incrimination and therefore to be unenforceable; imposition of criminal penalties for non-compliance was an impermissible burden on the exercise of the privilege." 401 U.S. at p. 672, 91 S.Ct. at p. 1163.

■ We take these statements to mean, as applied to the present case, that Lewis and Lane may not be convicted of attempting to evade the wagering excise tax if, in attempting to evade it, they have done nothing more than fail to take actions which cannot be required because they fall within the scope of the Fifth Amendment privilege. Lewis and Lane have done nothing more, in a joint capacity, than fail to file a partnership return and pay the partnership tax. The indictment seeks to punish them for an attempt to evade doing just that. Since they cannot be punished for failure to pay the wagering tax, proper assertion of the Fifth Amendment privilege under the rule of *Marchetti* and *Grosso* protects them from prosecution for an attempt to evade such payment. This charge should have been dismissed.

Both convictions of each defendant are reversed and the indictments should be dismissed.

Reversed.

GODBOLD, Circuit Judge (specially concurring):

As to part II, I concur in the result that reversal is required but on grounds different from those given by Judge Roney. The offense charged is that the defendants jointly engaged in the business of accepting wagers and attempted to evade and defeat wagering excise tax due and owing by their partnership by filing false and fraudulent (individual) returns on which their combined gross wagers were less than in fact they were. Defendants did not file partnership returns, were not charged with failure to do so and, under *Marchetti*[1] and *Grosso*,[2] could not be so charged. But those cases do not forgive a taxpayer (partnership or individual) who accepts wagers from liability for the tax. Nor do those cases insulate partners from criminal responsibility for efforts to evade the tax so long as the effort which is the basis for criminal responsibility is not a mere failure to file a partnership return. In this instance the charge is that the effort to evade partnership tax took the form of understatement of partnership wagers on the individual returns voluntarily filed. The offense thus charged is no less an offense than to charge perjury committed before a grand jury by a witness who could not be required to testify but elected voluntarily to do so, and no less an offense than voluntarily sending to IRS, in an attempt to evade partnership taxes, a false affidavit stating, "We swear that we have ceased our partnership wagering operations, so please don't bother us any more about partnership taxes."

To sustain its theory the government was required to come forward with proof (1) that the individual returns included some partnership wagers, or, conversely, that the individuals did not do as much individual wagering as the returns said, leading to an inference that the excess was composed of partnership wagers, and (2), that partnership wagers included in the total of wagers re-

1. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

2. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

ported were less than all the partnership wagers.[3] The government did not come forward with evidence required of it. The record shows that the defendants accepted $41,329 of partnership wagers and that the combined amount of the individual returns was $33,447. But for all we know, the returns included only individual wagers and no partnership wagers. The government cannot, as it attempts to do, shift to defendants the obligation to prove the correctness of the returns or face conviction. In this criminal case there is no presumption of governmental correctness as with a civil assessment.

The convictions must be reversed, not for failure to charge an offense but for failure to prove the offense charged, and the case should be remanded for further proceedings.

3. We need not face the question of whether (1) alone would constitute an offense— that is, arguably misleading the government by reporting partnership wagers on an individual return without regard to whether such misreporting is of all partnership wagers or less than all. The indictment here charges an *underreporting*.

Also it seems to me that evidence of (1) alone is not sufficient to shift to the taxpayer the burden of coming forward with evidence either that no partnership wagers are included in the return, or that *some* are included and that those so included are all of the partnership wagers. The burden remains on the government to prove what it alleged, which is *understatement* of partnership wagers, and the taxpayer, whether he reported only partnership bets or mingled partnership and individual bets, cannot be required to adduce evidence that he *did not understate*. Thus, until the government had come forward with evidence on (1) and (2), the defendants were not required to rebut.